In the Matter of M.S. WIEN &
CO., INC., Debtor.

SECURITIES & EXCHANGE
COMMISSION, Plaintiff,

v.

M.S. WIEN & CO., INC., Defendant.

Bankruptcy No. 81–0889.

United States Bankruptcy Court,
D. New Jersey.

Feb. 1, 1985.

Robert David Crummy, Del Deo, Griffinger & Vecchione, Newark, N.J., for trustee.

William Seckinger, Washington, D.C., for Securities Investors Protection Corp.

OPINION

D. JOSEPH DeVITO, Bankruptcy Judge.

This matter comes to the Court on the motion of the trustee for M.S. Wien & Co., Inc. (Wien) to confirm the trustee's determination regarding certain open contractual commitment claims of Merit Investment Corporation (Merit). The relevant facts are undisputed, and may be summarized as follows:

The debtor, Wien, agreed to sell in house securities owned by Merit, its customer. The contracts were:

| Trade Date | Settlement Date | Issuer | Number of Shares | Total Price |
|---|---|---|---|---|
| 8/11/81 | 8/18/81 | XRG Int'l Inc. Common | 6,000 | $32,250 |
| 8/12/81 | 8/19/81 | " | 4,000 | $22,000 |

Merit did not receive payment for those securities prior to September 10, 1981, when the Securities Investor Protection Corporation (SIPC) filed an application for the appointment of a trustee in bankruptcy for Wien. Michael R. Griffinger, Esq. was appointed trustee. On September 10, 1981, an order was issued by Honorable Frederick B. Lacey, U.S.D.J., providing for an automatic stay as to all creditors, pursuant to 11 U.S.C. § 362.

Merit alleges that, on September 14, 1981, it engaged counsel seeking advice as to whether it might close out the securities in question without violating the automatic stay. Merit contends that it might have been found in contempt of court if it closed out the securities under dispute in light of specific wording in the order enjoining "all creditors of Wien from enforcing valid, non-preferential liens or pledges against the property of [Wien] and from exercising any set-off of debts as provided in § 553 of the Bankruptcy Code." Merit also contends that it was unable to contact the trustee until September 21, 1981, at which time the trustee informed Merit's counsel that Merit might close out without violating the said automatic stay.

Merit proceeded to file its claim based on losses of approximately $20,000, sustained when it did close out on September 21, 1981. The trustee, having determined that claims based on both securities' transactions should be disallowed, rejected the claims for the reason that they were not "completed within or promptly upon the expiration of 30 calendar days after settlement" pursuant to SIPC Rule 302. Rule 302, as authorized by the Securities Investor Protection Act Section 78fff-2[a][1], reads as follows:

[a] The closeout or completion of an open contractual commitment meeting the requirements of Rule 301 shall be effected only:

[1] By the buy-in or sell-out of the commitment by the other broker or dealer in accordance with the usual trade practices initiated by the other broker or dealer within or promptly upon the expiration of a period of 30 calendar days after settlement.

Under a strict reading of this rule, Merit was required to close out the disputed claims on September 17, 1981 and September 18, 1981, respectively.

Merit, arguing that its claim should be allowed and that the trustee's disallowance of that claim was in error and unfair, contends that its closeouts were prompt, in that it made efforts and did, in fact, effect a closeout within the 30 days required by Rule 302. In this contention, Merit requests this Court to interpret the term "initiated" in Rule 302[a][1] to encompass its action of going to counsel for guidance on the contempt issue as an attempt to "buy-in or sell-out." Alternatively, Merit contends that, if it did not effect a closeout in time, its delay should be excused since it was willing to close out, but appropriately hesitated in light of the stay and possible contempt.

SIPC takes the position that the rule (particularly the 30-day provision) should be construed strictly, and that the term "initiate" means an actual attempt to buy or sell the securities, not merely the act of consulting an attorney. SIPC contends that to attempt a sale, a broker must effectuate contact with a registered broker or a potential customer.

■ The precise issue to be decided is whether, because of Merit's failure to close out within thirty calendar days after settlement, Merit's claim is barred by Rule 302, or should that failure be excused because of Merit's fear of contempt of court under the automatic stay.

This Court, in *SEC v. Bovers, Parnass & Turel, Inc., et al.*, Civil Action No. 1725–72 (D.N.J.1976), in light of the decisions in *SEC v. Packer, Wilber & Co., Inc.*, 498 F.2d 978 (2d Cir.1974) and *SEC v. Kelly, Andrews & Bradley, Inc.*, 385 F.Supp. 948 (S.D.N.Y.1974), held that Section 6[d] of SIPA should be strictly construed. While there are differences between Section 6[d] and Rule 302[a][1], the Court believes that its construction of the rules under SIPA should be made in accordance with its construction of the Act itself.

In *SEC v. Kelly, supra*, at 953, the court found that:

SEC policy and general industry practice is that in the instance of a breach of contract by a purchasing broker—a 'fail to receive'—the selling broker should sell the securities, close out the transaction and not allow it to remain open."

This appears to be the intent of Rule 302 as well. If a broker is allowed to defer the sale of securities in order to achieve a favorable market, rather than make close-out within the 30-day period, the broker has failed to mitigate the loss of the selling broker and has, in effect, elected to assume the risk of its actions. This view is echoed in *Bovers, Parnall & Turel, supra,* where this Court said:

> It is crystal clear from the above cases that the statutory term 'open contractual commitments' is limited to wholly executory contract, *to be strictly construed* to the exclusion of partially executed contracts. (Emphasis added.)

■ This Court construes the terms, "in accordance with the usual trade practices *initiated* by the other dealer" (emphasis added), to mean an effective attempt to sell or close out securities to a broker or customer, and to exclude the mere consultation of an attorney as to the consequences thereof. The construction may appear harsh when, as in this case, the claimant does not close out in time. If it is understood that "initiation" excludes actions of a consultative nature, brokers will make such consultations in a timely manner so as to be able to comply with the rule.

■ Merit would have the Court forge an exception to the rule where the broker has an honest belief that it would be in violation of an injunction. In fact, the trustee is correct in saying that a timely close-out would not have violated the stay. In 1982, the House of Representatives enacted P.L. 97–222, clarifying the protections afforded the securities market. That act made it clear that 11 U.S.C. § 741, the [Bankruptcy] Code's stay provisions, is not to be construed to prevent brokers from closing out or liquidating open accounts of insolvent customers or brokers. The act states that "the prompt closing out or liquidation of such open accounts freezes the *status quo* and minimizes the potentially massive losses and chain reactions which would occur were the market to move sharply in the wrong direction." (H.R.

Rept. No. 420, 97th Congress, 2d Sess. (1982)).[1] Since this amendment did not change the Bankruptcy Code, Merit could have closed out without violating the automatic stay.

Merit contends that to confirm the trustee's determination that this claim should be disallowed would be unjust. This Court has broad equitable powers in an action to *reconsider* an allowance or disallowance of a particular claim pursuant to 11 U.S.C. § 502[j]. That section provides that a determination of reconsideration will be based on "the equities of the case." This is not, however, a case of reconsideration since until now no bankruptcy court has allowed or disallowed Merit's claim. Furthermore, for a court to do equity, the claimant must deserve equity. Merit was aware of the rule; it could have closed out well in advance of Judge Lacey's order. In fact, it had twenty-one and twenty-two days, respectively, to do so. The trustee was under no duty to render a legal opinion as to the stay; the broker should have approached the court which ordered the stay, seeking a judicial interpretation, or else complied with the rule in a timely manner. Its predicament was its own doing, and the inability of its lawyers to render an opinion as to the injunction its own responsibility.

Accordingly, an order shall be entered affirming the trustee's determination, disallowing the disputed claim by Merit Investment Corporation.

---

1. Bankruptcy Lawyers Edition, Code Commentary & Analysis, § 33:5.